8601

BETHEA v. WESTERN UNION TEL. CO.

TELEGRAPH COMPANIES—WILFULNESS—ISSUES.—There being evidence here that a death message to be transmitted forty miles on one wire was delayed on day received for two hours before close of office hours at office of destination and other business in meantime given preference, the issue of wilfulness was properly sent to the jury.

Before WILSON, J., March, 1912.     Affirmed.

Action by G. F. Bethea against Western Union Telegraph Company.    Defendant appeals.

*Messrs. Geo. F. Fearons, Willcox & Willcox, Henry Buck, J. S. Mitchell* and *Lucian W. McLemore,* for appellant, cite: *Message could not be transmitted after office hours at office of destination:* 73 S. C. 520; 71 S. C. 304, 386.  *Delay here is not sufficient to show wilfulness:* 79 S. C. 160; 73 S. C. 379; 77 S. C. 399; 65 S. C. 93.  *The delict alleged must be the proximate cause of the injury:* 72 S. C. 516; Jones, sec. 325; 70 S. C. 418.  *Jury is bound by charge:* 1 S. C. 14; 19 S. C. 491; 20 S. C. 559; 68 S. C. 526.

*Messrs. Townsend, Rogers & McLaurin,* contra, cite: *Long and unreasonable delay supports wilfulness:* 90 S. C. 537; 84 S. C. 164; 65 S. C. 99; 84 S. C. 483; 87 S. C. 320; 77 S. C. 399; 90 S. C. 425.  *Notice of suffering for failure to deliver was shown on face of message:* 77 S. C. 174; 73 S. C. 430; 69 S. C. 531; 70 S. C. 418.

July 5, 1913.    The opinion of the Court was delivered by

MR. CHIEF JUSTICE GARY.    This is an action for damages, alleged to have been sustained by the plaintiff, through the wrongful acts of the defendant, in failing to deliver the following telegram, within the time required by law:

"Florence, S. C., August 27, 1910.

"Wesley Bethea, Dillon, S. C.    I will be in with corpse tonight.    G. F. Bethea."

The corpse mentioned in the telegram, was that of Ella Bethea, sister of the plaintiff and daughter of Wesley Bethea, to whom the message was sent.

The fourth and sixth paragraphs of the complaint, are as follows:

IV. "That plaintiff is informed and believes, that the said message was not received at Dillon, until nine forty-five o'clock a. m. on the 28th day of August, 1910, and was not delivered to the addressee, Wesley Bethea, until the morning of the 29th day of August, 1910, although the said Wesley Bethea, lived within a few hundred yards of the Dillon office of the said defendant, and was in and about his home continuously, from the time said message was delivered to the defendant at Florence, on the afternoon of the 27th of August, 1910, to the time when same was delivered to him, in the morning of the 29th day of August, 1910."

VI. "That the failure of the defendant to transmit and deliver said message promptly, as it was in duty bound to do, was wilful, wanton, and gross negligence of a plain duty, which it owed to this plaintiff, and by reason of the wilful, wanton, and gross negligence and failure of the defendant, to transmit and deliver said message, no one was at the depot, to meet the mortal remains of his said sister with conveyances, and carry them to the home of his father, and the corpse of his said sister, was obliged to lie unprotected and unattended at the depot in Dillon, for a considerable length of time."

The jury rendered a verdict in favor of the plaintiff for $650, and the defendant appealed.

The appellant's attorneys in their argument say: "The principal question presented by the appeal is, whether the presiding Judge erred in refusing to direct a verdict in favor of the defendant, at the close of all the evidence, on the ground that there was no evidence, sufficient to take the issue of wilfulness to the jury.

We will proceed to the consideration of that question:

H. W. Seign, the telegraph operator at Florence, to whom the message was delivered for transmission, thus testified: "Do you recall any conversation that took place between you and the sender of that message? Yes, sir; I told him there would be some delay, on account I was there by myself. The manager was called out of town on account of his wife being sick, and it was piled up around there. You told him that, at the time you accepted the message? Yes, sir; I told him I didn't know how much it would be. Did you make an effort to send it to Dillon that night? Yes, sir. Why couldn't you send it? I was busy on other wires around there, and I didn't have very much time to get in a call. The wire, I think from Wilmington to Augusta, it was always piled up pretty near, and I didn't have the time I should have had to call him, on account of the manager being out of town. Was the Dillon office on that wire you speak of? Yes, sir. When you called him, you were not able to get him? No, sir; I didn't have very much time to call him; five or six times each time I called. At any time you attempted to call him, did you find him busy or the wire busy otherwise? I found him busy once, and the wire was busy otherwise. Are there not a number of offices on that same wire? Yes, sir.

Cross-examination:

"Mr. Seign, you saw by the terms of this message, that it was a death message? Yes, sir. Did you make any special effort to deliver that message? Well, I made all I could under the circumstances. And it was some time the next day, before you were able to get that message through? Yes, sir, on account of my being there by myself. Do you or not as a usual rule, try to give death messages preference to others? They are very common. So you don't make special effort? Yes, sir; they are supposed to go first. They have preference over the other business. This one didn't? We can't give them all preference. How many

death messages did you have that day? That afternoon from that time until this was transmitted? I don't think I had none. None at all? I don't think so. And still they are very common? Yes, sir. You say the business on that wire was much congested? Yes, sir. As a matter of fact, Mr. Seign, if you had made special effort, could you have gotten that message through here, before that time the next day? No, sir; if I had let all the other business go, and then if there be suits for other business—(interrupted). Don't tell that. If you had made special effort to get that message through, couldn't you have gotten it here before that time the next day? No, sir. Not even if you let it take preference over the other business? No, sir. Do you mean to say, Mr. Seign, as a matter of fact, if you had taken this message and given it preference to any other business, that you could not have got it here before that time? The office at Wilmington and Augusta, they are not going to allow you to keep the wires all day, on account they are piled up. Was there any other message sent from Florence to Dillon? No, sir; that was the only one sent. Do you mean to say that you told this plaintiff here, Garfield Bethea, that you couldn't get that message through right away? Yes, sir. You remember that? Yes, sir; and told the manager the same thing when he came to town, and I answered the statement on the papers."

This testimony tends to show upon its face, that there was a reckless disregard of the plaintiff's rights, in failing to transmit a message from Florence to Dillon, a distance of about forty miles, when the operator had more than two hours within which to send it, before the office at Dillon closed, and failed simply because there were other messages to be sent, but over which, death messages were entitled to precedence in transmission. The jury evidently did not believe this witness.

Judgment affirmed.